UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

| | |
|---|---|
| GRANGE PROPERTY & CASUALTY INSURANCE COMPANY, | |
| Plaintiff, | CIVIL ACTION NO. |
| v. | 2:17-CV-00199-RWS |
| STEVEN SMITH, *et al.*, | |
| Defendants. | |

## O R D E R

This case comes before the Court on Plaintiff Grange Property & Casualty

Insurance Company's ("Grange") Motion for Summary Judgment [29] and

Defendant Gary Smith's Motion for Summary Judgment [30]. Also before the

Court is Grange's Motion for Leave to File Supplemental Brief [43].

As a preliminary matter, the Motion for Leave is **GRANTED**. The Court

has read Grange's supplemental brief and considered the arguments therein.[1]

---

[1]  Gary has objected to Grange's request to supplement the briefing and requested that if
the Court allows Grange to do so it afford Gary an opportunity to respond on the merits.
A response, however, is not necessary.  The Court is fully informed of the issues at play
and the parties' relative positions.

As for the remaining motions, after reviewing the record, the Court enters the following Order.

## Background

The facts of this declaratory judgment case are largely undisputed. It stems from a motor vehicle accident on April 25, 2015. (Pl.'s Statement of Undisputed Material Facts ("Pl.'s SOF"), Dkt. [29-1] ¶ 1.) Steven Smith was driving his grandfather's 2006 Chrysler Town & Country at the time. (Id.) He crossed the center line and struck a vehicle driven by Gary Smith;[2] Corey Dyer was sitting in Gary's passenger seat. (Id.) Gary and Corey suffered injuries from the accident, and both of them filed lawsuits against Steven in state court.[3] (Id. ¶ 2.)

Gary and Corey each believe the claims they have asserted in those lawsuits are covered under a personal automobile insurance policy that Grange issued to Steven's parents, Randall and Angela Smith, (Ex. A, Pl.'s MSJ ("Insurance Policy"), Dkt. [29-3]).[4] Although that policy names only two insureds—Randall and Angela—it also extends coverage to their "family member[s]," subject to

---

[2]  Gary is not related to Steven.
[3]  Dylan Wilbanks, as conservator of Corey's estate is now pursuing an action on Corey's behalf. According to the pleadings in that case, Corey suffered a permanent "catastrophic disability" as a result of the accident.
[4]  When the Court cites to the insurance policy, the page numbers correspond to the ones in the CM/ECF header.

certain restrictions.[5] (Id. at 4, 20, 22.) The policy defines a "family member" as someone related to Randall and Angela who shares the same "principal residence" as them. (Id. at 20.)

Randall and Angela live at 7629 Fish Hook Lane—the only address listed in the policy's declarations. (Pl.'s SOF, Dkt. [29-1] ¶ 9; Insurance Policy, Dkt. [29-3] at 4.) Up until 2012, Steven lived there too. But, sometime after Steven married, in 2012, he moved to a home in a different city with his former wife. (Pl.'s SOF, Dkt. [29-1] ¶ 21; Gary's Resp. to Pl.'s SOF, Dkt. [34-2] ¶ 21.) When he did, Steven changed his driver's license to reflect the change in address. (Ex. 3, Gary's MSJ ("Steven Dep."), Dkt. [30-5] at 23.)[6] In 2014, however, Steven and his former wife separated. (Steven Dep., Dkt. [30-5] at 18.) According to Steven, he then moved in with his grandfather whose house is next door to Steven's parents'. (Id.; Pl.'s SOF, Dkt. [29-1] ¶ 20.) Steven, though, did not change his driver's license to reflect his living situation. (Steven Dep., Dkt. [30-5] at 23–24.) Instead, he changed it to include his parents' address. (Id.) Likewise, 7629 Fish Hook

---

[5] Additionally, the policy defines an "insured" as "Any person using **your covered auto.**" A "covered auto" is "[a]ny vehicle shown in the Declarations." In the subject policy, there are three; none of them the 2006 Chrysler Town & Country Steven was operating. Thus, Steven cannot qualify as an insured under this subpart to the definition.
[6] As with the insurance policy, when the Court cites to Steven's deposition testimony, the page numbers correspond to the ones that appear in the CM/ECF header.

Lane appears on a number of other documents associated with Steven, including those on file with the IRS. (Def. Gary Smith's Statement of Material Facts ("Gary's SOF"), Dkt. [30-2] ¶ 16.) Steven, too, indicated to his employer, personal insurance provider, bank, and credit card companies that he lived with his parents. (Id. ¶¶ 12–15; Pl.'s Resp. to Gary's SOF, Dkt. [36] ¶ 7.) And finally, in a parenting plan he filed with his former wife in October of 2014, Steven represented that, at the time of filing, he "is located at 7629 Fish Hook Lane[.]" (Id. at 92.)

On September 27, 2017, Grange filed the instant action for declaratory relief, see 28 U.S.C. § 2201, to clarify what duties it owes Steven in the underlying lawsuits filed by Gary and Corey. Specifically, Grange seeks a declaration (1) that the policy does not cover any of the claims raised in the underlying lawsuits, (2) that Grange does not have a duty to defend any party in the underlying lawsuits,[7] and (3) that the policy does not afford coverage "for any claims for punitive damages" asserted in the underlying lawsuits. (Compl., Dkt. [1] ¶ 71.) Grange has now moved for summary judgment, (Dkt. [29]), as has Gary, (Dkt. [30]).

---

[7] Grange has, however, been defending Steven in the underlying lawsuits subject to a reservation of rights.

## Discussion

## I. Legal Standard - Motions for Summary Judgment

Federal Rule of Civil Procedure 56 requires that summary judgment be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "The moving party bears 'the initial responsibility of informing the . . . court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1259 (11th Cir. 2004) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). Where the moving party makes such a showing, the burden shifts to the non-movant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

The applicable substantive law identifies which facts are material. Id. at 248. A fact is not material if a dispute over that fact will not affect the outcome of the suit under the governing law. Id. An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the non-moving party. Id. at 249–50.

In resolving a motion for summary judgment, the court must view all evidence and draw all reasonable inferences in the light most favorable to the non-moving party. Patton v. Triad Guar. Ins. Corp., 277 F.3d 1294, 1296 (11th Cir. 2002). But, the court is bound only to draw those inferences that are reasonable. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249–50 (internal citations omitted); see also Matsushita, 475 U.S. at 586 (once the moving party has met its burden under Rule 56(a), the nonmoving party "must do more than simply show there is some metaphysical doubt as to the material facts").

## II.    Analysis

The present motions for summary judgment raise two primary issues: (1) whether Steven was covered under his parents' insurance policy on the date of the accident; and (2) whether Grange waived its right to challenge punitive damages under a provision in the policy excluding such damages. The Court takes each issue in turn.

A.    Coverage

Grange seeks a declaration from the Court that the policy does not extend

coverage to Steven.  Grange's position is, in fact, two-fold: Grange asserts, first,

that the policy does not cover any of the claims asserted against Steven in the

underlying lawsuits, and second, that it has no duty to defend Steven in those

cases.  In essence, then, Grange argues that it is not required to provide a defense

to Steven and that, in the event Steven is found liable in the underlying cases,

Grange has no duty to indemnify him.  Because in Georgia[8] "an insurer's duty to

pay and its duty to defend are separate and independent obligations," Penn-Am.

Ins. Co. v. Disabled Am. Veterans, Inc., 490 S.E.2d 374, 376 (Ga. 1997), the Court

analyzes them separately.

1.    *Duty to Defend*

Under Georgia law, "[a]n insurer must provide a defense against any

complaint that, if successful, might potentially or arguably fall within the policy's

coverage."  Elan Pharm. Research Corp. v. Employers Ins. of Wausau, 144 F.3d

1372, 1375 (11th Cir. 1998).  In deciding whether there is a duty to defend, the

Court looks to "the language of the insurance contract and the allegations of the

---

[8]  It is undisputed that Georgia law governs the Court's interpretation of the subject
insurance policy.  (See Dkt. [16] at 2–3; see also Dkt. [29-2] at 11–12; Dkt. [33-3] at 5–
6.)

complaint asserted against the insured." <u>City of Atlanta v. St. Paul Fire & Marine Ins. Co.</u>, 498 S.E.2d 782, 784 (Ga. Ct. App. 1998). "If the facts as alleged in the complaint even arguably bring the occurrence within the policy's coverage, the insurer has a duty to defend the action." <u>Id.</u>

Insurance policies are governed by the traditional rules of contract construction. So, the Court "must consider [the policy] as a whole, give effect to each provision, and interpret each provision to harmonize with each other." <u>York Ins. Co. v. Williams Seafood of Albany, Inc.</u>, 544 S.E.2d 156, 157 (Ga. 2001). Except that "insurance policies are contracts of adhesion[.]" <u>First Fin. Ins. Co. v. Am. Sandblasting Co.</u>, 477 S.E.2d 390, 392 (Ga. Ct. App. 1996). And as a result, they must "be construed as reasonably understood by an insured," <u>id.</u>—in other words, the Court must read the policy as a "layman" would, "not as it might be analyzed by an insurance expert or an attorney," <u>Cincinnati Ins. Co. v. Davis</u>, 265 S.E.2d 102, 105 (Ga. Ct. App. 1980). <u>See also</u> <u>U.S. Fire Ins. Co. v. Capital Ford Truck Sales, Inc.</u>, 355 S.E.2d 428, 429 (Ga. 1987) ("The test is not what the insurer intended its words to mean, but what a reasonable person in the position of the insured would understand them to mean."). Of course, if the terms are unambiguous, "their plain meaning will be given effect, regardless of whether they might be of benefit to the insurer, or be of detriment to an insured." <u>Payne v.</u>

Twiggs Cty. Sch. Dist., 496 S.E.2d 690, 691–92 (Ga. 1998).  But if a provision "is susceptible of two or more constructions," then "it is ambiguous[.]"  Am. Strategic Ins. Corp. v. Helm, 759 S.E.2d 563, 565 (Ga. Ct. App. 2014).  And in that case, the Court must turn to Georgia's "statutory rules of contract construction," id., one being that "[a]ny ambiguities . . . are strictly construed against the insurer as drafter of the document."  Richards v. Hanover Ins. Co., 299 S.E.2d 561, 563 (Ga. 1983).

Here, the Court finds that Grange has a duty to defend Steven in the underlying lawsuits because Steven arguably qualifies as a "family member" under the policy, so the policy *might* provide coverage for the conduct described in the underlying complaints, (Dkt. [1-1]).  See Elan Pharm., 144 F.3d at 1375.  Part A of the policy provides that, upon payment of a premium, Grange "will pay compensatory damages for **bodily injury or property damage** for which any **insured** becomes legally responsible because of an auto accident."  (Insurance Policy, Dkt. [29-3] at 22.)  An "insured" includes Randall and Angela Smith "or any **family member** for the ownership, maintenance or use of any auto . . . ."  (Id.)  Turning to the "Definitions" section:

> **"Family member"** means a person related to **you** [*i.e.*, Randall and Angela] by blood, marriage or adoption and whose principal residence is at the location shown in the Declarations.

(Id. at 20.)  The only address listed in the Declarations is Randall and Angela's, 7629 Fish Hook Lane.  (Id. at 4.)

Seizing on this language, Grange argues that Steven cannot be a "family member" under the policy because he lived with his grandparents at the time of the accident, meaning his "principal residence" could not have been 7629 Fish Hook Lane.

The policy does not provide a definition for "principal residence."  Nor does it appear that Georgia courts have endeavored to define that term in the context of other insurance policies.[9]  Although that does not automatically render the term ambiguous, Gulf Tampa Drydock Co. v. Great Atl. Ins. Co., 757 F.2d 1172, 1175 (11th Cir. 1985) ("Ambiguity is not invariably present when analysis is required to

---

[9]  The Court is not persuaded by the cases relied on by Grange, all of which involved insurance policies with subtle, but key distinctions from the one at issue here.  S. Gen. Ins. Co. v. Foy, 631 S.E.2d 419, 421 (Ga. Ct. App. 2006) (involving a policy affording coverage to vehicles "regular[ly] or frequent[ly] use by you or a resident of your household"); McCullough v. Reyes, 651 S.E.2d 810, 814 (2007) (Ga. Ct. App.) (Policy defining insured as "you . . . and, if residents of your household, . . . your relatives.").  Notably, those policies included the word "household," a term that has received some attention from Georgia courts over the years.  But, a "household" is not the same as a "residence" (at least not necessarily).  Whereas the former refers to a "domestic unit"— that is, the number of people (whether family members or non-relatives) living under the same roof, see, e.g., THE AMERICAN HERITAGE COLLEGE DICTIONARY 659 (3d ed. 1997)—"residence," by contrast, can mean several things, including the home itself, see infra.

interpret the policy."), the Court nevertheless finds that, here, "principal residence" as used in the Grange insurance policy is subject to multiple interpretations.

Take first the word "residence." It can refer to a number of things. One being, "The place in which one lives." THE AMERICAN HERITAGE COLLEGE DICTIONARY 1161 (3d ed. 1997). Another is simply "a dwelling." Id. The inclusion of "principal" as a modifier, of course, limits the type of residence contemplated by the policy. But, it does not render it unambiguous.

"Principal" means "[f]irst, highest, or foremost in importance, rank, worth, or degree; chief." THE AMERICAN HERITAGE COLLEGE DICTIONARY 1088 (3d ed. 1997); *accord* GARNER'S MODERN ENGLISH USAGE (4th ed. 2016) (noting that "principal" connotes that something is "chief, primary, most important"). Accordingly, "principal residence" could mean the one place where someone lives or the place he or she lives most often. But it could also refer to the most important of that person's several dwellings. Indeed, there is no reason to believe that a person can have only one residence. It is not like a domicile, of which there can be only one.[10] To the contrary, as one authority explains, someone "may have more than one residence at a time . . . ." *Residence*, BLACK'S LAW DICTIONARY

_____

[10] Albeit, the terms "residence" and "domicile" are sometimes used interchangeably. For present purposes, however, it is sufficient to say that "residence" is subject to multiple interpretations and it need not necessarily mean domicile.

(9th ed. 2009). And the Court of Appeals of Georgia seems to agree. In a different context, it clarified, "'Domicile,' unlike 'residence,' means a permanent place of abode, whereas 'residence' is not necessarily permanent, and may be at some place other than the place of domicile." Kean v. Marshall, 669 S.E.2d 463, 465 (Ga. Ct. App. 2008) (citations omitted).

The subject provision is therefore ambiguous. And consequently, it must be strictly construed against Grange as the drafter. Richards, 299 S.E.2d at 563. Doing so results in the following interpretation of the term "principal residence": It is a person's primary dwelling—that is, the livable structure that is most important to him or her. And applying that definition to the facts at hand, it stands to reason that Steven might have *temporarily* resided with his grandfather but maintained his *principal* residence at his parents' house, 7629 Fish Hook Lane.

The current record could support such a finding. Steven testified that he was living with his grandparents at the time of the accident—indeed, that he had been doing so for over a year at that point. But, Gary maintains that Steven's primary residence was, in fact, his parents' house because he represented that it was numerous times, including to the state and federal governments on his driver's license and tax filings, as well as to his employer, auto insurance carrier, and credit card companies. Steven also attested that his parents' address was his primary

residence on the visitation agreement he filed together with his former wife in state superior court.

Citing Steven's deposition testimony, Grange responds that Steven only used his parents' address in such a way because it was easier to have mail delivered there. Plaintiff, however, contends that Steven's grandparents' house has a nearly identical mailbox that Steven could have used.

Based on this evidence, it could be said, as Gary puts it, that Steven was merely a "sojourner" at his grandfather's residence, but his "principal residence" was his parents' house. Indeed, 7629 Fish Hook Lane was where he had his mail sent. It is also where he stayed after the auto accident that forms the basis for the underlying suits. And, Steven represented and attested that he resided at 7629 Fish Hook Lane multiple times. It is telling, too, that Steven changed the address on his driver's license when he moved away from his parents' house to live with his former wife, but after their separation, Steven did not replace the address with his grandfather's—where he was supposedly living at the time—but rather his parents'.

Based on these facts, there is, indeed, uncertainty as to whether 7629 Fish Hook Lane was Steven's "principal residence" on the date of the accident, even under the definition the Court has ascribed to that term. And that makes sense

given that questions of domicile and residence are mixed questions of law and fact ordinarily reserved for a jury to determine. E.g., Geiger v. Georgia Farm Bureau Mut. Ins. Co., 699 S.E.2d 571, 574 (Ga. Ct. App. 2010); also cf. S. Gen. Ins. Co. v. Foy, 631 S.E.2d 419, 421 (Ga. Ct. App. 2006) ("[A]ny effort to define the members of a household involves a mixed question of law and fact."). In deciding whether Grange has a duty to defend Steven in the underlying cases, however, the Court's inquiry is limited to whether the policy "even arguably" provides coverage. See, e.g., St. Paul Fire & Marine Ins. Co., 498 S.E.2d at 784. Because it is *arguable* that Steven's "principal residence" was 7629 Fish Hook Lane on April 25, 2015 (the date of the accident), Steven *might* meet the policy's definition of "family member" and, by extension, Steven *could* qualify as an "insured." Though speculative at best, for purposes of this analysis, that is all that is required. Thus, the Court finds that Grange has a duty to defend Steven in the underlying actions.

### 2. *Duty to Indemnify*

The duty to indemnify is separate from the duty to defend and depends on whether the insured "becomes legally obligated to pay [sums] as damages because of 'bodily injury' or 'property damage.'" Nationwide Mut. Fire Ins. Co. v. Somers, 591 S.E.2d 430, 434 (Ga. Ct. App. 2003). As a result, an insurer might be required to defend an insured, but at the end of the underlying lawsuit, have no

duty to indemnify him.  See, e.g., Trizec Properties v. Biltmore Constr. Co., 767

F.2d 810, 812 (11th Cir. 1985).  Disputes related to an insurer's duty to indemnify

are typically not ripe until liability is established in the underlying action.  See

J.B.D. Constr., Inc. v. Mid-Continent Cas. Co., 571 F. App'x 918, 927 (11th Cir.

2014) ("The duty to indemnify is dependent upon the entry of a final judgment,

settlement, or a final resolution of the underlying claims."); Smithers Constr., Inc.

v. Bituminous Cas. Corp., 563 F. Supp. 2d 1345, 1348 (S.D. Fla. 2008) ("[A]n

insurer's duty to indemnify is not ripe for adjudication in a declaratory judgment

action until the insured is in fact held liable in the underlying suit." (citation

omitted)); see also Nationwide Mut. Fire Ins. Co. v. Dillard House, Inc., 651 F.

Supp. 2d 1367, 1373 (N.D. Ga. 2009) ("The court should not pass on questions of

insurance coverage and liability for indemnification when the contingencies giving

rise to them may never occur.  To do so would amount to an advisory opinion."

(citation omitted)); State Farm Fire & Cas. Co. v. Myrick, 206-CV-359-WKW,

2007 WL 3120262, at *2 (M.D. Ala. Oct. 23, 2007) ("Resolving the duty to

indemnify before the underlying case is concluded could potentially waste

resources of the court because the duty to indemnify could become moot if the

insured prevails in the underlying lawsuit.").

Ripeness, as an Article III doctrine, ultimately "goes to whether [a] district court had subject matter jurisdiction to hear the case." Dig. Properties, Inc. v. City of Plantation, 121 F.3d 586, 591 (11th Cir. 1997). So, when there is an issue of ripeness, the Court is obligated to address it, even if the parties have not. See, e.g., Essex Ins. Co. v. Sega Ventures, LLC, No. CV413-253, 2015 WL 1505979, at *4 (S.D. Ga. Mar. 31, 2015) ("Here, the underlying suit is ongoing and any liability has yet to be established. Should the defendants in the underlying suit prevail, any decision by this Court on Plaintiff's duty to indemnify would necessarily be moot and a waste of judicial resources. Accordingly, although the parties do not raise the issue, the Court shall follow the Eleventh Circuit's warning and not address the parties' arguments concerning Plaintiff's prospective duty to indemnify.") (citing Nationwide Mut. Fire Ins. Co. v. Dillard House, Inc., 651 F. Supp. 2d 1367, 1372–73 (N.D. Ga. 2009) (holding *sua sponte* that parties' duty to indemnify arguments were premature)).

Here, Grange's duty to indemnify claim—*i.e.*, its request for a declaration "that there is no coverage afforded under the policy . . . for any of the claims that have, or could have, been asserted . . . in the underlying litigation in connection with the subject incident," (Compl., Dkt. [1] at 22)—is not ripe. There is no suggestion that liability has been established in the underlying lawsuits. To the

contrary, it appears those cases have been stayed.  See Gary's Resp. to Grange's

MSJ, Dkt. [34-1] at 2; Online Docket for Smith v. Smith, 2017SV000416 (Sup. Ct.

Hall Cty.), *available at* https://docket.hallcourts.com/result/2017SV000416; Online

Docket for Wilbanks v. Smith, 2017SV000292 (Sup. Ct. Hall Cty.), *available at*

https://docket.hallcourts.com/result/2017SV000292 (order granting motion to stay

proceedings filed March 14, 2018).  The Court therefore finds that a decision on

Grange's duty to indemnify is not appropriate at this juncture.  See Mid-Continent

Cas. Co. v. Delacruz Drywall Plastering & Stucco, Inc., 766 F. App'x 768, 770–71

(11th Cir. 2019) (upholding district court's finding that insurer's duty to indemnify

claim was unripe).

B.    Punitive Damages

The policy provides in a section titled "Limit of Liability" that "[d]amages

payable under this coverage are compensatory damages; they do not include

punitive or exemplary damages."  (Insurance Policy, Dkt. [29-3] at 25.)

Citing this provision, Grange seeks a declaration that there is no coverage

for claims of punitive damages asserted in the underlying lawsuits.[11]  Gary

---

[11]  Because punitive damages have not been awarded in the underlying lawsuits, this
claim, too, appears to be unripe.  However, there is an exception to the ripeness rule when
"the court can determine that the allegations in the complaint could under no
circumstances lead to a result which would trigger the duty to indemnify."  Northland

responds that Grange waived its ability to use this provision as a defense because in three letters denying coverage, Grange failed to specifically cite the policy's punitive damages exclusion; instead, Grange denied coverage on the basis that "Steven['s] [] principal residence was not at his father's residence, which was listed in the Declarations of the policy." (Ex. 7, Gary's MSJ, Dkt., [30-9] at 2; see also Ex. 6 & 8, Dkt. [30-8 & 30-10] (other two denial letters)). Gary's argument is misguided. Although it faces a number of problems, it is sufficient for present purposes to say that Grange properly reserved its right to mitigate potential liability under the policy's punitive damages exclusion.

> A reservation of rights is a term of art in insurance vernacular and is designed to allow an insurer to provide a defense to its insured while still preserving the option of litigating and ultimately denying coverage. At a minimum, the reservation of rights must fairly inform the insured that, notwithstanding the insurer's defense of the action, it disclaims liability and does not waive the defenses available to it against the insured.

Hoover v. Maxum Indem. Co., 730 S.E.2d 413, 416 (Ga. 2012) (internal citations and quotations omitted). "The reservation of rights should also inform the insured of the specific basis for the insurer's reservations about coverage." World Harvest Church, Inc. v. GuideOne Mut. Ins. Co., 695 S.E.2d 6, 10 (Ga. 2010) (alterations,

_____

Cas. Co. v. HBE Corp., 160 F. Supp. 2d 1348, 1360 (M.D. Fla. 2001). For the reasons described herein, this is such a situation.

18

internal quotations, and citation omitted). However, "an insurance company is not required to 'list each and every basis for contesting coverage in the reservation-of-rights letter before the company [can] raise such in the declaratory judgment action.'" Kay-Lex Co. v. Essex Ins. Co., 649 S.E.2d 602, 608 (Ga. Ct. App. 2007) (quoting Gov't Employees Ins. Co. v. Progressive Cas. Ins. Co., 622 S.E.2d 92 (Ga. Ct. App. 2005)) (alteration in original).

Here, Grange sent Steven a reservation of rights making clear that "punitive damages are plead in the [underlying] Complaints, but are not covered under the Grange policy." (Dkt. [1-3] at 4.) This was more than sufficient to inform Steven that Grange could pursue a punitive damages defense. And the policy is, indeed, emphatically clear that Grange would not pay for punitive damages in cases involving bodily injury. Thus, the Court finds that the policy does not cover any claims for punitive damages asserted in the underlying lawsuits.

## Conclusion

For the foregoing reasons, Grange's Motion for Leave to File Supplemental Brief [43] is **GRANTED**. Grange's Motion for Summary Judgment [29] is **GRANTED in part and DENIED in part**. And Defendant Gary Smith's Motion for Summary Judgment [30] is likewise **GRANTED in part and DENIED in part**. Grange's Motion is granted as to the issue of punitive damages: The Court

finds that that there is no coverage afforded under the policy, or any of its endorsements, for any claims for punitive damages that have been asserted against any party hereto or named in the underlying litigation in connection with the subject incident. Grange's Motion is denied as to all other issues. Meanwhile, Gary's Motion is granted as to Grange's duty to defend claim; however, it is denied as to all other issues. The result is that Grange must continue to defend Steven in the underlying lawsuits. But, questions related to Grange's ultimate obligation to indemnify Steven for any damages that might be awarded in the underlying lawsuits are not ripe for adjudication. Grange's duty to indemnify claim must therefore be **DISMISSED without prejudice**. As a result, there are no claims remaining in this action. The Clerk is **DIRECTED** to close the case.

     **SO ORDERED** this 23rd day of August, 2019.

_____
**RICHARD W. STORY**
United States District Judge